*171 Opinion of the Court,
by Judge Mills.
THE appellant, being a justice of the peace, mitted a bright mulatto single woman, to take oath fore him, that the appellee was the father of her bastard child, and thereupon issued his warrant of arrest in the usual form, by which the appellee was arrested and cognized to appear at the next county court, to answer the charge, and be subject to the maintenance of the child, if the court should so determine. The appellee brought this action of trespass, assault and battery, false imprisonment, against the appellant, who attempted to justify under the warrant', which the court below refused to allow. The same question was presented a motion for a new trial, which was overruled, and this appeal is prayed.
It is insisted for the appellant, that he had jurisdiction of the case, and that his permitting the oath and issuing the warrant, was only an error of judgment, if was an error at all, in applying the law to the lar case, and, therefore, no action of trespass will lie, but only an action on the case, and that in no case, except where he abused his authority from malicious and *172 rupt motives. It is in general true, that no action of trespass will lie against a justice of the peace for acting erroneously, in a case where he has cognizance of the matter. But we do not consider it necessary to enquire whether this principle will excuse the appellant in this case; for we are not disposed to admit, that he acted even erroneously, in the act complained of.
If the mother is an incompetent witness, other evidence may be adduced, to ascertain the fact.
An action of trespass will not lie a-against a justice of the peace, for .acting erroneously in a case where he has cognizance of the matter.
The act of assembly which govern these proceedings, when pointing out what kind of female may make the charge on oath, declares that “any single woman not being a slave," shall be permitted thus to swear and obtain a warrant. It is evident, therefore, that free single persons of color cannot be excluded, without construing away the express provision of the act. Jlny single woman, is broad enough not to exclude any; but when the exception, “not being a slave," follows, no other, according to a well settled rule of construction, can be excepted; and thus exceplio probat regulum.
Satisfied, therefore, that this act permitted the oath, and authorised the emanation of the warrant, and that the legislature did not intend to leave children of this kind to suffer unprovided for, or to permit the county to bear-their, expenses without redress, we have been led to examine whether there is any other act which has a bearing on the subject. We accordingly find two, of a subsequent date, which have been supposed to disqualify' such an applicant to a justice of the peace, and to forbid such an oath and warrant thereupon. The first provides, that “no negro or mulatto shall be a witness, except in pleas of the commonwealth against negroes or mulattoes, or in civil cases, where negroes or mulattoes alone shall be parties.” 2 Dig. L. K. 1150. The second declares, that “no negro, mulatto or Indian, shall be admitted to give evidence, but against or between negroes, mulattoes, or Indians.” 2 Dig. L. K. 1251. Although these two acts are expressed in words somewhat different from each other, yet their meaning is essentially the same, and the expressions in the first, “shall be a witness," are tantamount to the words, shall be admitted to give evidence•" and they evidently exclude negroes or .mulattoes, from testifying or deposing against whites, on the trial of any issue or inquiry of damages made in any pending controversy between proper parties. They, however, do not do more than this. Besides the giving of evidence in a pending con *173 troversy, there are many cases where affidavits are made, preparatory to commencing a suit or controversy* or to procure such orders and steps to be taken therein, as may be necessary to bring about a trial. Such are the oaths made to warrant extraordinary process, as in this case; to require bail; to procure continuances; to obtain absent testimony; and 'to obtain new trials, or the like. In such case, they are not used as evidence to decide the matter in dispute, but as necessary to induce the functionaries of the law to take some step to forward the controversy, or attain justice. Can it be admitted, as must have been supposed in the court below, that the acts in question preclude these disqualified creatures from taking an oath for such a purpose? We conceive not. Such a construction would carry these acts beyond their meaning, and would, in many cases, produce great injustice, when a contrary construction will prevent all the mischiefs intended to be guarded against by the statutes. A creditor, who was a person of.color, could not, by any oath stop the progress of an absconding debtor, by obtaining bail, or a ne exeat. He could obtain no habeas corpus, where his petition must be sworn to, nor procure a continuance, however just his grounds might be. He could obtain no injunction, however his equity might be, against an unrighteous and fraudulent judgment, because his bill must be sworn to, and he could not take the oath; and on the contrary, a bill enjoining his just judgment, on a pretended equity, wholly untrue, because he could not answer without oath, and he could not make the oath necessary to admit his answer, of course, must be confessed. Although the right of such a being to sue and be sued, might be tolerated by law; yet he often could not sue or defend, especially in a court of equity. We, therefore, conceive that the acts in question impose no such disqualification to take any oath, or make any affidavit which'may be necessary, as in this case, to commence the controversy, or to forward an accusation or support a defence incidental and preparatory to the trial in chief. We shall barely add to the evils of a different construction, that creatures of this character, must forever be the victims of forgery, without redress. It will be easy to sue them on a forged instrument, and they could not plead non est factum without oath, or make the oath ne *174 cessary to admit the plea; of course, judgment must ™>>-ighte°usly rendered. With our construction of these statutes, accords the British precedents, on their statutes imposing disqualifications as witnesses on sundry, classes of persons. They were allowed to make affidavits requiring bail, and for such preparatory or- incidental objects; and it has been held, that a person convicted of perjury, and, of course, rendered by statute an incompetent witness, might be allowed to take an oath, showing the irregularity of a judgment. See Ba. Abr. title Evidence, page 289; 2 Haw. P. C. 433; 1 Sell. Prac. 117; Salk. 461.
The only plausible objection against admitting the oath, and issuing the warrant in this case, under this construction of these acts, is, that the mother could not thereafter be a witness on the trial in chief, when the controversy was tried in the county court, and, therefore, no conviction could be had. If it be conceded that the mother could not be a witness on the trial in chief, it does not follow, that there could be no conviction. The mother of such a child, is the best witness, it is true; but if she is incompetent, it does not follow, that the court cannot admit other evidence, and thereby ascertain and convict the father, such as frequency of access and cohabitation, proved by others, or circumstantial testimony, or the confessions of the accused, or the like. If such evidence would be improper, unless the mother could be heard, it would then follow, not only that the illegitimate children of free colored persons, but of whites, convicted of such infamous crimes as rendered them incompetent witnesses, must be left to starve or be supported by the county, without imposing the natural duty on the fathers, which were the evils the legislature intended to remedy, by authorising such proceedings with regard to illegitimate children.
We, therefore, conclude that the appellant acted correctly in permitting the oath of the mulatto woman, and issuing the necessary warrant thereon, and that he was entitled to justify under his proceedings, conclusively, against the action of the appellee, and that the court below erred in refusing to permit him to do so by. plea, and in not deciding in his favor on the evidence introduced by the appellee, tó support his affirmative of the general issue.
*175 The judgment must be reversed with costs, and the verdict be set aside, and the cause be remanded for new proceedings, not inconsistent with this opinion.